United States District Court
Southern District of Texas
**ENTERED**
August 16, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MICHAEL CROWLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00201 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Michael Crowley ("Plaintiff"), a Texas inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a motion to dismiss filed by all but two of the defendants in this case. (Doc. No. 42.) Plaintiff has responded in opposition. (Doc. No. 56.) No reply was filed. For the reasons set forth below, the undersigned recommends that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

**A. *Jurisdiction.***

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

**B. *Proceedings and the current claims.***

Plaintiff is currently a prisoner in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"), housed at the McConnell Unit in Beeville, Texas.  (Doc. No. 18, p. 2.)  In his amended complaint, Plaintiff named 17 defendants:[1]

- Bryan Collier ("Director Collier"), Executive Director of the Texas Department of Criminal Justice ("TDCJ");

- Bobby Lumpkin ("Director Lumpkin"), TDCJ-CID's Executive Director;

- Warden [first name unknown] Sammiego, assistant warden at the McConnell Unit ("Warden Sammiego");

- Warden A. Ammonnet, warden at the McConnell Unit ("Warden Ammonnet");

- Warden [first name unknown] Flannell, assistant warden at the McConnell Unit ("Warden Flannell");

- Major Kelvin Masters, unit major at the McConnell Unit ("Major Masters");

- Captain Jennifer Herbst, captain and senior supervisor at the McConnell Unit ("Captain Herbst");

- Lieutenant David G. Dougherty, supervisor at the McConnell Unit ("Lieutenant Dougherty");

- Lieutenant Adam Bleidrey, supervisor at the McConnell Unit ("Lieutenant Bleidrey");

- Sergeant Raissa Martinez, supervisor at the McConnell Unit ("Sergeant Martinez");

- Sergeant Jesse Perez, supervisor at the McConnell Unit ("Sergeant Perez");

- Sergeant Katherine Ralphs, supervisor at the McConnell Unit ("Sergeant Ralphs");

---

[1]  The names and alleged duty positions of these defendants are drawn verbatim from Plaintiff's amended complaint.

- Sergeant Dennis Austin, supervisor at the McConnell Unit ("Sergeant Austin");

- Sergeant A. Jumenez, supervisor at the McConnell Unit ("Sergeant Jumenez");

- Officer Eisa Chapa, correctional officer at the McConnell Unit ("Officer Chapa");

- Officer Elijah Sanchez, correctional officer at the McConnell Unit ("Officer Sanchez"); and

- Sergeant Samantha Ramirez, supervisor at the McConnell Unit ("Sergeant Ramirez").

(Doc. No. 18, pp. 2-7.) Plaintiff also purported to sue an unspecified number of unknown corrections officers and an unspecified number of unknown nurses. *Id.* at 8.

Plaintiff's complaint centers on living conditions that allegedly were excessively hot during the summer of 2023. Liberally construed and broadly stated, Plaintiff claims that the prison's allegedly hot conditions were unconstitutional, that prison officials exhibited deliberate indifference to his serious medical needs caused by those conditions, that prison officials retaliated against him for complaining about the conditions, and that an unknown prison official stole a notebook in which Plaintiff was allegedly documenting instances of deliberate indifference or other improper conduct.

For purposes of screening under 28 U.S.C. § 1915, the Court directed Plaintiff to answer a questionnaire to provide additional details about his claims. (Doc. No. 22.) Plaintiff complied. (Doc. Nos. 24, 24-1, 24-2.)

The undersigned recommended that the district court retain the following claims:

- Plaintiff's Eighth Amendment conditions of confinement claim against Director Collier in his official capacity for injunctive relief;

- Plaintiff's Eighth Amendment deliberate indifference claim against Warden Flannell in her individual capacity for her alleged personal instruction to McConnell Unit staff to

deny respite to inmates and to "kick people out" of respite after 15 to 25 minutes, and for allegedly putting into place an unconstitutional policy regarding respite;

- Plaintiff's Eighth Amendment deliberate indifference claim against Warden Sammiego in his individual capacity for his alleged personal instruction to McConnell Unit staff to deny or limit respite to inmates;

- Plaintiff's Eighth Amendment deliberate indifference claim against Captain Herbst in her individual capacity for denying him respite on June 18, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Bleidrey in his individual capacity for denying him respite on June 18, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Dougherty in his individual capacity for denying him respite on June 18, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Martinez in her individual capacity for alleged denials of respite or medical attention on June 4, June 18, and June 26, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Ralphs in her individual capacity for alleged denials of respite on June 16 and on an unspecified occasion in July 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Austin in his individual capacity for alleged denials of respite or medical attention on June 18, September 7, and on various occasions between September 7 and 17, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Perez in his individual capacity for denying Plaintiff respite and medical attention on June 19 and July 19, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Ramirez in her individual capacity for denying him respite on July 30, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Officer Chapa in her individual capacity for denying him respite on June 26, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against Officer Sanchez in his individual capacity for allegedly ordering Plaintiff to leave respite on July 22, 2023;

- Plaintiff's Eighth Amendment deliberate indifference claim against unknown corrections officers in their individual capacities for alleged denials of respite or medical screening on June 16, June 18, June 26, July 14, July 17, September 18, September 19, and September 20, 2023;

- Plaintiff's failure-to-accommodate claims under the Americans With Disabilities Act[2] ("ADA") and Rehabilitation Act[3] ("RA") against Director Collier, Director Lumpkin, Warden Flannell, Warden Sammiego, Warden Ammonnet, and Major Masters in their official capacities for injunctive relief;

- Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty in his individual capacity for allegedly tearing down Plaintiff's "need respite" sign on June 4, 2023.

(Doc. No. 29, pp. 89-91.) The undersigned recommended that the district court dismiss the remainder of Plaintiff's claims, which included:

---

[2] 42 U.S.C. § 12132.

[3] 29 U.S.C. § 794.

- Plaintiff's Eighth Amendment conditions of confinement claim against Director Lumpkin, Warden Flannell, Warden Sammiego, and Warden Ammonnet in their official capacities;

- Plaintiff's Eighth Amendment deliberate indifference claim against Warden Flannell and Warden Sammiego in their individual capacities to the extent he alleges that they failed generally to provide for and ensure adequate heat mitigation measures;

- All of Plaintiff's claims against Major Masters, Sergeant Jumenez, and the unknown nurses in their individual capacities;

- Plaintiff's Eighth Amendment claim against Captain Herbst in her individual capacity for her failure to check the temperature in his cell upon his request and for allegedly allowing other officers and medical personnel to mistreat him;

- Plaintiff's Eighth Amendment claims against Lieutenant Bleidrey, Sergeant Ralphs, and Sergeant Austin in their individual capacities for allegedly tearing down Plaintiff's "need respite" sign;

- Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Dougherty in his individual capacity for allegedly allowing other officers and medical personnel to mistreat him;

- Plaintiff's Eighth Amendment claims against Sergeant Martinez in her individual capacity for alleged verbal abuse and for allegedly lying to investigators;

- Plaintiff's Eighth Amendment claim against Sergeant Perez and Sergeant Ramirez in their individual capacities for allegedly not providing Plaintiff with the names of other officers;

- Plaintiff's Eighth Amendment deliberate indifference claim against Officer Chapa in her individual capacity for alleged denial of medical attention;

- Plaintiff's Eighth Amendment deliberate indifference claim against Officer Sanchez for alleged denial of dayroom privileges and showers in September 2023 and for allegedly failing to provide Plaintiff with his name upon request;

- Plaintiff's Eighth Amendment deliberate indifference claims against the unknown corrections officers in their individual capacities for all unspecified dates in September 2023;

- Plaintiff's First Amendment retaliation claims against all defendants;

- Plaintiff's First, Fourth, and Fourteenth Amendment claims regarding the alleged theft of his notebook; and

- Plaintiff's Fourteenth Amendment discrimination claims.

*Id.* at 91-92.  The undersigned recommended that the district court deny leave to amend the claims recommended for dismissal.  *Id.* at 92.

The district court adopted the undersigned's recommendation in part.  (Doc. No. 63.) The district court dismissed Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Dougherty in his individual capacity for denying him respite on June 18, 2023.  *Id.* at 40.  The district court also retained Plaintiff's retaliation claims against Sergeant Ramirez for writing a false major disciplinary case because he filed grievances, against Sergeant Martinez for writing a minor disciplinary case because he requested respite and filed grievances, and against unknown corrections officers for stealing Plaintiff's notebook because he filed grievances.  *Id.* at 40-41.  The undersigned is separately ordering a responsive pleading addressing the retaliation claims.

Prior to the district court's action, the undersigned ordered service on the remaining defendants and directed them to file a responsive pleading.  (Doc. Nos. 30, 47.)  This dismissal motion followed.  (Doc. No. 42.)  Plaintiff responded to the motion.  (Doc. No. 56.)

Plaintiff's amended complaint is the operative pleading in this case.  (Doc. No. 18.)  In the interests of justice and because Plaintiff is proceeding *pro se*, the undersigned addresses Plaintiff's amended complaint (Doc. No. 18), the affidavit and medical record submitted alongside his original complaint (Doc. Nos. 7, 7-1), and his responses to the Court's questionnaire and accompanying attachments (Doc. Nos. 24, 24-1, 24-2).  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers); *see also McDavid v. Thompson*, No. 6:20cv579, 2022 WL 1192783, at *1 (E.D. Tex. Feb. 16, 2022), *adopted*, 2022 WL 636718 (E.D. Tex. Mar. 3, 2022) (citing *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983)) (discussing liberal construction of pro se plaintiff's original complaint and its attachments after amendment).

### C.  The motion to dismiss and Plaintiff's response.

All but two of the remaining defendants have moved to dismiss Plaintiff's action.  (Doc. No. 42.)[4]  These defendants contend that the Court lacks subject matter jurisdiction over any claims brought against any of the defendants in their official capacities, because of Eleventh Amendment immunity.  (Doc. No. 42, pp. 2-4; *see* Fed. R. Civ. P. 12(b)(1).)  The defendants

---

[4]  Texas' Office of Attorney General filed this dismissal motion on behalf of all of the named defendants except Captain Herbst and Lieutenant Bleidrey.  Captain Herbst, the Attorney General's Office states, is no longer employed by Texas Department of Criminal Justice, and the Attorney General's Office states that it does not have the authority to waive service on her behalf.  (Doc. No. 43.)  At the Court's direction, the Attorney General's Office provided Captain Herbst's last known contact information under seal; Captain Herbst was then served but has not responded or entered an appearance.  *See* Doc. No. 51.  The Attorney General's Office also stated that it had not yet obtained authority to represent Lieutenant Bleidrey, but that it would responsively plead on his behalf once it obtained that authority.  (Doc. No. 43, p. 1.)  No responsive pleading has been filed as of the date of this memorandum and recommendation.

also claim that Plaintiff has failed to state a claim upon which relief may be granted (*see* Fed. R. Civ. P. 12(b)(6)), because:

- Plaintiff fails to plausibly allege that the defendants subjected him to a substantial risk of serious harm, or that they acted with subjective disregard to any such risk (Doc. No. 42, pp. 4-6);

- Plaintiff fails to plausibly allege a conditions of confinement claim (*id.* at 6-8);

- Plaintiff fails to plausibly allege deliberate indifference to his medical needs (*id.* at 8-11);

- Plaintiff fails to plausibly allege a failure to accommodate claim under the ADA or the RA (*id.* at 11-12);

- Plaintiff fails to plausibly allege a viable First Amendment retaliation claim (*id.* at 12-13); and

- The moving defendants are entitled to qualified immunity from suit against them in their individual capacities (*id.* at 13-15).

Plaintiff filed a response to the dismissal motion.  (Doc. No. 56.)  Liberally construed, Plaintiff argues that Eleventh Amendment immunity does not apply because he does not seek monetary sanctions against any defendant in his or her official capacity (*id.* at 3) and because he has plausibly alleged a viable ADA and RA claim (*id.* at 5); he also argues that he has plausibly alleged viable claims under the Eighth Amendment (*id.* at 8-17), the ADA and RA (*id.* at 7), and the First Amendment (*id.* at 17-18).  The moving defendants did not file a reply to Plaintiff's response.

### D. *The Rule 12(b)(1) motion.*

Director Collier, Director Lumpkin, Assistant Warden Flannel, Assistant Warden Sammiego, Warden Ammonnet, and Major Masters seek dismissal of Plaintiff's claims against them in their official capacities, pursuant to Federal Rule of Civil Procedure 12(b)(1). Director Collier's jurisdictional argument is aimed both at Plaintiff's Eighth Amendment conditions of confinement claim (Director Collier is the only defendant for whom the undersigned recommended retention of that claim) and his ADA and RA claim. The other defendants claim a lack of subject matter jurisdiction over the ADA and RA claim. All of these defendants base their argument on immunity from suit which, they assert, is conferred by the Eleventh Amendment. (Doc. No. 42, pp. 2-4.) For the reasons discussed below, the undersigned disagrees.

#### 1. *Dismissal motions under Rule 12(b)(1).*

The undersigned considers the defendants' Rule 12(b)(1) motion before considering the other attacks on Plaintiff's complaint. This is because a Rule 12(b)(1) jurisdictional attack, when filed in conjunction with other Rule 12 motions, should be considered before addressing any attack on the merits. *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 616-17 (5th Cir. 2020) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Dismissal of a complaint for lack of subject matter jurisdiction is proper only when the claim is "'so completely devoid of merit as not to involve a federal controversy.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (quoting *Brownback v. King*, 592 U.S. 209, 217 (2021) (internal quotation and citation omitted)). A claim fails that test when the plaintiff does not "plausibly allege all jurisdictional [elements]." *Id.* (quoting *Brownback*, 592 U.S. at 217).

In evaluating a motion to dismiss under Rule 12(b)(1), the court accepts as true those well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). The court may consider the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* (citing *Ramming*, 281 F.3d at 161). "When considering a Rule 12(b)(1) motion, a district court may go beyond the pleadings to affidavits and other evidence to determine its jurisdiction." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at *2 (5th Cir. July 20, 2022) (unpublished) (citing *Williamson v. Tucker*, 645 F.2d 404, 413-14 (5th Cir. 1981)).

### 2. *Sovereign immunity and the Eleventh Amendment.*

The Eleventh Amendment to the United States Constitution provides that the judicial power of the United States "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). This sovereign immunity "also prohibits suits against state officials or agencies that are effectively suits against a state – thus, suits against state officers in their official capacities are also subject to the sovereign immunity bar. *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974)). Unless the state has waived sovereign immunity, or unless Congress has abrogated it, the Eleventh Amendment bars Plaintiff's suit against the defendants in their official capacities, because a suit against a state official in his or her official capacity is not against the official but is rather a suit against the

official's office – it is no different from a suit against the state itself. *Paxton*, 943 F.3d at 997 (citing *AT&T Commc'ns v. Bellsouth Telecomms. Inc.*, 238 F.3d 636, 644-45 (5th Cir. 2001)); *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014). TDCJ qualifies as an arm of the state of Texas. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998); *see also Dottin v. Tex. Dep't of Crim. Just.*, No. 1:13-cv-710, 2014 WL 11498078, at * 11 (E.D. Tex. Nov. 25, 2014), *aff'd*, 627 F. App'x 397 (5th Cir. 2015). Eleventh Amendment immunity applies to claims seeking damages and injunctive relief alike. *See Clark v. Charles Schwab Corp.*, No. 4:24-cv-00073, 2024 WL 3402861, at *2 (N.D. Tex. June 27, 2024) (citing *Cory v. White*, 457 U.S. 85, 91 (1982)).

An exception to the sovereign immunity rule, however, was established in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception allows a plaintiff to seek injunctive relief to enjoin ongoing violations of federal law. *See Harrison v. Young*, 48 F.4th 331, 337 (5th Cir. 2022) (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-56 (2011)). Thus, state officials who are violating federal law can be sued for prospective relief. *Id.* (citing *Verizon Md., Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The prospectiveness of the requested relief is a critical distinction: merely requesting injunctive relief "does not automatically put a suit on the *Ex parte Young* side of the line. The key is not the type of relief sought but whether the remedy is preventing ongoing violations of federal law as opposed to past ones." *Harrison*, 48 F.4th at 338. The *Ex parte Young* exception applies only to prospective relief and does not permit judgments against state officers declaring that they violated federal law in the past. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). To meet the *Ex parte Young* exception, then, a plaintiff must name individual state officials as a defendants in their official capacities, must allege an

ongoing violation of federal law, and must seek relief that is properly characterized as prospective. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024).

### 3. *Conditions of confinement claim.*

Director Collier contends that sovereign immunity bars Plaintiff's claim against him in his official capacity. He argues that because he is a state official, a suit against him amounts to a suit against the State, and that a federal court "cannot award monetary damages against that state official." (Doc. No. 42, p. 3 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Houston v. Zeller*, 91 F. App'x 956, 957 (5th Cir. 2004)).

The undersigned previously recommended a finding that Plaintiff has sufficiently alleged an Eighth Amendment conditions of confinement claim. Plaintiff contends that he has been diagnosed with Wolff-Parkinson-White Syndrome and other medical conditions, cannot thermoregulate like other people, and has been issued "heat restrictions" by TDCJ, indicating his susceptibility to heat. (Doc. No. 18, pp. 2, 16; Doc. No. 24, p. 1 ¶ 11.) Meanwhile, the conditions in his cell have allegedly been unsafely hot (extremely hot – hot enough to melt a rubber band in one's locker, he says) and insufficiently ventilated, and areas of respite and cool showers are insufficiently available. (Doc. No. 18, pp. 13-15.) He also claims that he was not permitted to have a bottle for water, which he contends is the only way to get cold or cool water into his cell during periods of lockdown (as opposed to cups, which allegedly cannot fit underneath the door); but bottles, he says, are considered contraband. *Id.* at 13. Plaintiff also alleges that he has attempted to bring his plight to the attention of prison officials but that they have not afforded him appropriate access to respite or to cold showers.[5] *See, e.g.*, *id.* at 17-30. These allegations, taken as true, sufficiently allege an objective substantial risk – an ongoing risk

---

[5] Plaintiff does not allege that he has requested but been denied a transfer to an air-conditioned unit.

– to Plaintiff's health or safety. Plaintiff further plausibly alleges that Director Collier has policymaking authority. *See id.* at 2; *cf. id.* at 3 (describing responsibility of other official-capacity defendants besides Director Collier). The undersigned concluded that Plaintiff's allegations were sufficient to allege, for purposes of screening, that Director Collier exhibited deliberate indifference to Plaintiff's health and safety by virtue of promulgating insufficient policies and procedures to ensure his safety during hot conditions.

Plaintiff is not seeking monetary damages against Director Collier. As he makes clear in his response to the Court's questionnaire, he seeks only prospective injunctive relief. *See* Doc. No. 24, p. 3 ¶ 30(f). Because Plaintiff's request for injunctive relief seeks to bring an ongoing violation to an immediate halt, his action against Director Collier in his official capacity therefore falls within the *Ex parte Young* exception and survives Eleventh Amendment scrutiny. *Cf. Tiede v. Collier*, No. 1:23-CV-1004-RP, 2024 WL 3016562, at *5-*6 (W.D. Tex. June 14, 2024); *Williams v. Gauna*, No. 2:22-CV-00005, 2022 WL 18359153, at *4 (S.D. Tex. Dec. 20, 2022) (Libby, M.J.), *adopted*, 2023 WL 289724 (S.D. Tex. Jan. 18, 2023); *Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2022 WL 824842, at *8 (N.D. Tex. Mar. 18, 2022) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)). The district court should therefore DENY the Rule 12(b)(1) motion to dismiss the claim against Director Collier in his official capacity.

### 4. ADA and RA claims.

Plaintiff's ADA and RA claims are leveled at Director Collier, Director Lumpkin, Warden Flannell, Warden Sammiego, Warden Ammonnet, and Major Masters in their official capacities for injunctive relief. Because TDCJ is an arm of the state, all of these official-capacity defendants enjoy sovereign immunity, which has not been waived. Thus, the Court possesses

jurisdiction over Plaintiff's ADA and RA claims only if Congress has validly abrogated sovereign immunity.

To determine whether sovereign immunity has been validly abrogated, courts examine:

(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Luke v. Texas*, 46 F.4th 301, 305 (5th Cir. 2022).

In this case, the moving defendants assert that Texas has not waived its sovereign immunity to suit or otherwise consented to it. (Doc. No. 42, p. 3.) And they argue that Congress has not abrogated Texas' sovereign immunity, because Plaintiff fails to plausibly allege any conduct that violated Title II of the ADA. *Id.* at 3-4. Responding, Plaintiff argues that he has indeed plausibly alleged an ADA and RA claim. (Doc. No. 56, p. 5.) Because the defendants' argument is based wholly on their Rule 12(b)(6) argument claim that Plaintiff has failed to state an ADA or RA claim upon which relief may be granted, the undersigned discusses that argument below. The undersigned concludes below that Plaintiff has alleged ADA and RA claims that are sufficient to survive the Rule 12(b)(6) motion, and therefore recommends that the district court DENY the defendants' Rule 12(b)(1) dismissal motion.

### 5. *Recap of Rule 12(b)(1) motion recommendations.*

The district court should take the following actions regarding the Rule 12(b)(1) dismissal motion:

- DENY the motion to dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Director Collier in his official capacity for injunctive relief; and

- DENY the motion to dismiss Plaintiff's ADA and RA claims against Director Collier, Director Lumpkin, Warden Flannell, Warden Sammiego, Warden Ammonet, and Major Masters in their official capacities for injunctive relief.

### E. The Rule 12(b)(6) motion.

The moving defendants also seek dismissal based on Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff has failed to state claims upon which relief may be granted. The defendants also seek dismissal based on the doctrine of qualified immunity. For the reasons discussed below, the district court should dismiss one of Plaintiff's claims (for denial or delay or medical care) but should deny the Rule 12(b)(6) motion regarding the other claims.

### 1. Dismissal motions under Rule 12(b)(6).

Rule 12(b)(6) provides that a party may assert by motion a defense that a plaintiff's complaint "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion for dismissal under this rule, courts assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The requirement for facial plausibility is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The pleading standard does not require detailed factual allegations, "but does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Hurd v. Barnette*, No. 6:15cv734, 2017 WL 9289643, at *11 (E.D. Tex. Jan. 24, 2017), *adopted*, 2017 WL 892118 (E.D. Tex. Mar. 6, 2017) (citing *Iqbal*, 556 U.S. at 677-78).

A Rule 12(b)(6) motion "tests the sufficiency of the pleadings, not the merits of the case." *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Sewell v. Monroe City*

*Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020)).  For this reason, well-pleaded factual allegations of a complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *Id.*

Courts may, in evaluating motions filed under Rule 12(b)(6), consider evidence that is attached to the motion itself, referred to in the complaint, and central to the plaintiff's claim, or that is subject to judicial notice under Federal Rule of Evidence 201.  *George*, 36 F.4th at 619 (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).  If the court considers evidence beyond the pleadings or these additional matters, the court commits error.  *Id.* (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)).  But even though *pro se* pleadings are viewed under a less stringent standard than those penned by an attorney, a court "need not credit conclusory allegations, legal conclusions couched as factual allegations, or unwarranted deductions of fact."  *Trevino v. City of Pleasanton*, No. 5:18-CV-00688-DAE-RBF, 2019 WL 1793360, at *4 (W.D. Tex. Apr. 23, 2019) (internal quotation marks omitted) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)); *see also Iqbal*, 556 U.S. at 678.

### 2.  Defendants' dismissal motion based on failure to state a viable claim should be granted in part.

The defendants argue that Plaintiff has failed to plausibly allege violations of the Eighth Amendment or the ADA or RA.  (Doc. No. 42, pp. 4-13.)  As discussed below, the district court should grant in part the defendants' bid for dismissal based on Rule 12(b)(6).

### a.  Director Collier: conditions of confinement – the district court should DENY the Rule 12(b)(6) motion.

Plaintiff sues Director Collier in his official capacity under the Eighth Amendment for the allegedly excessive heat conditions, and seeks only injunctive relief.  *See* Doc. No. 24, p. 3 ¶ 30(f).  To state a claim for a violation of the Eighth Amendment based on conditions of

confinement, a plaintiff must allege that the prison conditions pose a significantly serious threat

to his health and that prison officials acted with deliberate indifference to that threat. *See*

*Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Hope v. Harris*, 861 F. App'x 571, 582

(5th Cir. 2021). With regard to the latter element, an allegation of something more than mere

negligence is required: a plaintiff must plausibly allege that the defendant knew of, and

disregarded, an excessive risk to a prisoner's health or safety. *See Hope*, 861 F. App'x at 583.

Subjective knowledge in this context can be inferred through circumstantial evidence, and may

also be inferred from the fact that a risk of harm was "obvious." *See Austin v. City of Pasadena,*

*Tex.*, 74 F.4th 312, 328 (5th Cir. 2023). And in the context of a prison official sued in his or her

official capacity for injunctive relief (as with Director Collier here):

> When there is a possible constitutional violation that is likely to continue over time
> as in a prison injunction case, we consider evidence from the time suit is filed to
> the judgment. Deliberate indifference is determined based on prison officials'
> current attitudes and conduct. The evidence must show over the course of the
> timeline that officials knowingly and unreasonably disregard[ed] an objectively
> intolerable risk of harm, and that they will continue to do so; and finally to establish
> eligibility for an injunction, the inmate must demonstrate the continuance of that
> disregard during the remainder of the litigation and into the future.

*Valentine*, 993 F.3d at 282 (cleaned up).

Here, Director Collier does not contend that Plaintiff fails to allege a significantly serious

health or safety threat. Rather, he argues only that Plaintiff has failed to plausibly allege

deliberate indifference. In seeking dismissal under Rule 12(b)(6), Director Collier argues that

Plaintiff "fails to show that Collier, or the agency, knew of and disregarded an excessive risk to

inmate health or safety." (Doc. No. 42, p. 7.) He continues: "It is not enough that [Plaintiff]

may say [Director] Collier is aware of the risks that heat poses to prisoners. To assert a claim

under the Eighth Amendment, [Plaintiff] must show that [Director] Collier 'subjectively believes

the measures they are taking are inadequate.'" *Id.* (quoting *Valentine*, 956 F.3d at 802 (cleaned up)).

In response, Plaintiff argues that Director Collier has done just that, because Director Collier allegedly continues to rely on Administrative Directive (AD) 10.64, TDCJ's heat mitigation policy, while knowing that it is, according to Plaintiff, ineffective in mitigating the injurious effects of extreme heat. (Doc. No. 56, p. 10; Doc. No. 18, p. 12 ¶ 10.) To nudge this claim of Director Collier's subjective knowledge from conclusory to plausible, Plaintiff offers several points. First, he alleges (liberally construed) that AD 10.64's mitigation measures themselves are so obviously deficient that they both fall below constitutional minima and provide the requisite evidence of Director Collier's subjective knowledge. *See* Doc. No. 56, pp. 10-11. AD 10.64's measures are deficient, Plaintiff argues, because they do not require TDCJ to provide electrolytes, cool towels, gym shorts, cool shirts, and bottled water in quantities small enough to fit underneath cell doors. *Id.* at 11. Second, Plaintiff contends that Director Collier knows that the McConnell Unit is so short-staffed that AD 10.64's heat mitigation measures (even if they were otherwise reasonable) cannot possibly be complied with and are routinely bypassed. *See* Doc. No. 56, pp. 11-12; *see also* Doc. No. 18, pp. 12, 18. Inadequate staff, Plaintiff argues, renders AD 10.64's measures meaningless because, among other reasons, wellness checks cannot be conducted and cool showers and respite cannot be accessed by those who need them. (Doc. No. 56, p. 11.) And taking these arguments together, Plaintiff contends, his claim of unconstitutional conditions of confinement is plausible.

At the Rule 12(b)(6) stage, the undersigned concludes that Plaintiff has alleged sufficient facts to plausibly claim that Director Collier subjectively knew (or knows) that AD 10.64's remedial measures are insufficient to protect Plaintiff from an unreasonable risk of harm and that

injunctive relief is therefore warranted.  The district court should DENY Director Collier's Rule 12(b)(6) dismissal motion on this point.

### b. Individual defendants: Eighth Amendment deliberate indifference – denial or termination of respite – the district court should DENY the Rule 12(b)(6) motion.

All but two of the individual defendants who are accused of denying or terminating respite seek dismissal under Rule 12(b)(6).  These moving defendants are Warden Sammiego, Warden Flannell, Lieutenant Dougherty,[6] Sergeant Martinez, Sergeant Perez, Sergeant Ralphs, Sergeant Austin, Officer Chapa, Officer Sanchez, and Sergeant Ramirez.  As discussed above, Captain Herbst and Lieutenant Bleidrey have not appeared in this case and therefore have not joined in this dismissal motion.

The Eighth Amendment "guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures."  *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017).  There is no constitutional requirement that prisons be air conditioned, nor is there any "maximum" temperature or specific required remedial measure.  *See Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015).  The Constitution likewise does not require the elimination of all risks related to heat illnesses.  *See id*. ("Some risk is permissible and perhaps unavoidable.").

"To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health – an objective test – and prison officials must have acted with deliberate indifference to the risk posed – a subjective test."  *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (Eighth Amendment violated when

---

[6]  The district court dismissed the deliberate indifference claim against Lieutenant Dougherty.  (Doc. No. 63, p. 40.) The district court should therefore DENY as moot Lieutenant Dougherty's Rule 12(b)(6) motion with regard to this claim.

prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see also Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (affirming holding that inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

To demonstrate that prison conditions pose an unreasonable risk of serious damage to a prisoner's health, an inmate need not show that a death or serious injury has already occurred but rather only that there is a "substantial risk of serious harm." *Ball*, 792 F.3d at 593 (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)). "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect." *Id.* at 592 (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam)).

Here, liberally construed, Plaintiff alleges that he was denied access to respite, or had respite terminated, by each of the individual defendants or at their direction. *See*, *e.g.*, Doc. No. 24, p. 4 ¶ 32 (Warden Flannell); *id.* ¶ 31 (Warden Sammiego); *id.* ¶ 37 (Sergeant Martinez); *id.* at 6 ¶ 39 (Sergeant Ralphs); *id.* at 6 ¶ 40 (Sergeant Austin); Doc. No. 18, p. 24 (Sergeant Perez); *id.* at 25 (Sergeant Ramirez); *id.* at 22 (Officer Chapa); *id.* at 24 (Officer Sanchez). Plaintiff also alleges that he has certain medical conditions and heat restrictions. *See* Doc. No. 18, p. 16; Doc. No. 24, p. 1 ¶ 11. Plaintiff specifically alleges that he directly informed each of these individual defendants about his specific medical condition and needs. *See* Doc. No. 24, p. 4 ¶ 31(c) (Warden Sammiego); *id.* ¶ 32(c) (Warden Flannell); *id.* at 5 ¶ 37(c) (Sergeant Martinez); *id.* ¶ 38(c) (Sergeant Perez); *id.* at 6 ¶ 39(c) (Sergeant Ralphs); *id.* ¶ 40(c) (Sergeant Austin); *id.* ¶

41(c) (Officer Chapa); *id.* ¶ 43(c) (Officer Sanchez); *id.* ¶ 44(c) (Sergeant Ramirez). And Plaintiff alleges that the denial or termination of respite exposed him to a substantial risk of serious harm on each of the alleged occasions. He also points out the extreme heat conditions in the unit, including the very hot summer weather conditions, the high temperatures in Plaintiff's cell, and Plaintiff's alleged special sensitivity to heat. *Cf. Webb*, 618 F. App'x at 208.

In seeking dismissal under Rule 12(b)(6), the individual defendants first argue that Plaintiff made "various unsubstantiated conclusory allegations" that he was denied respite on the dates alleged. (Doc. No. 42, p. 9.) Rather than being conclusory, though, Plaintiff's factual allegations are sufficiently specific, listing precise dates (and often times of day) and circumstances of each request for each individual defendant. The defendants argue that the allegations are "unsubstantiated," but Plaintiff's factual allegations are taken as true for purposes of this dismissal motion. *See George*, 36 F.4th at 619.

The individual defendants also argue that Plaintiff has "failed to demonstrate that Defendants actually perceived a significant risk." (Doc. No. 42, p. 9.) Although these defendants are not medical professionals, *see id.*, Plaintiff's allegations indicate that he told each of them about his specific medical needs, either directly or through grievances or ombudsman requests. Plaintiff has also lodged specific factual allegations regarding overall heat conditions at the McConnell Unit, which appear plain enough to have been subjectively known to all who worked there; this, combined with the heat mitigation training that Plaintiff alleges that TDCJ employees receive, is sufficient to allege subjective awareness of the risk to Plaintiff's safety. *See* Doc. No. 18, pp. 11-12; *id.* at 14-15 ¶¶ 19-20. Plaintiff plausibly alleges that each of the

individual defendants subjectively knew of the risk to Plaintiff's health presented by unmitigated excessive heat conditions.[7]

The individual defendants next argue that Plaintiff's complaints about respite access do not rise to the level of a constitutional violation. (Doc. No. 42, p. 10.) They liken respite to medical care, and argue that a delay in medical care cannot result in an Eighth Amendment violation absent deliberate indifference that actually results in substantial harm. *Id.* While a showing of substantial harm is needed for a viable Eighth Amendment deliberate indifference claim for delay of medical treatment, *see Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), the defendants cite no authority indicating that "respite" – that is, a temporary air conditioned location – constitutes "medical treatment" such that a plausible allegation of substantial harm is required. The defendants' facile argument is further undercut by Plaintiff's allegations that indicate that "respite" is a heat mitigation measure controlled by security personnel, not by medical personnel. *See* Doc. No. 18, p. 10; Doc. No. 56, p. 15. While the defendants' argument may ultimately prevail on a summary judgment motion or at trial, it does not warrant dismissal under Rule 12(b)(6).

Because Plaintiff has plausibly alleged deliberate indifference from the discrete denials or terminations of respite, dismissal is inappropriate at this time. The district court should DENY the moving defendants' Rule 12(b)(6) motion on this point. Although dismissal is inappropriate

---

[7]  The defendants cite one instance, on June 18, 2023, in which Plaintiff was denied respite upon returning from the air conditioned infirmary. (Doc. No. 42, p. 10.) But that alleged denial of respite involved two individual defendants who have not moved for dismissal here – Captain Herbst and Lieutenant Bleidrey. *See* Doc. No. 18, p. 20 ¶ 49. (The district court dismissed the claim against Lieutenant Dougherty regarding the alleged June 18 incident.) In any event, through counsel, the defendants argue that "Defendants clearly relied on competent medical staff evaluation of [Plaintiff] in escorting him back to his cell instead of meeting [his] demands." (Doc. No. 42, p. 10.) That argument is one interpretation of the evidence, and it might ultimately prevail at summary judgment or trial, but it cannot prevail now because it does not demonstrate that Plaintiff has failed to adequately allege deliberate indifference as a matter of law.

under Rule 12(b)(6), additional discussion below addresses the defendants' claim of qualified immunity.

### c. *Individual defendants: Eighth Amendment deliberate indifference – denial or delay of medical care – the district court should GRANT the Rule 12(b)(6) motion.*

The individual defendants who are accused of denying or delaying medical care seek dismissal under Rule 12(b)(6). Based on the claims retained after screening, these moving defendants are Sergeant Martinez, Sergeant Perez, and Sergeant Austin, as well as the unknown corrections officers.

The denial or delay of treatment for serious medical needs violates the Eighth Amendment. *See Carlucci*, 884 F.3d at 538 (citing *Estelle v. Gamble*, 429 U.S. 97, 101 (1976)). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). To lodge a viable Eighth Amendment claim against individual defendants based on denial of medical care, Plaintiff must plausibly allege that each defendant possessed subjective knowledge of a substantial risk of serious medical harm, and responded with deliberate indifference to the risk. *See Carlucci*, 884 F.3d at 538. A plaintiff shows deliberate indifference in this context by plausibly alleging that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A delay in medical treatment that results in substantial harm, such as additional pain, can constitute deliberate indifference. *See Carlucci*, 884 F.3d at 538; *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). "Substantial harm occurs when a plaintiff suffers lasting complications from the injury." *Epley v. Lopez¸* No. 1:18-

cv-00115-BU, 2023 WL 2483502, at *11 (N.D. Tex. Feb. 27, 2023), *adopted*, 2023 WL 2481607

(N.D. Tex. Mar. 13, 2023) (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)).

Here, the retained claims relate to requests for medical treatment for alleged heat-related

illness on various dates in June, July, and September 2023.  *See* Doc. No. 29, pp. 89-90.[8]  As

Plaintiff's own submitted documents show, Plaintiff received medical screening and treatment

for this complaint on multiple dates throughout this time frame and beyond.  *E.g.*, Doc. No. 18,

pp. 19-20 ¶¶ 46-47 and Doc. No. 18-6, p. 4 (June 18);[9] Doc. No. 18, p. at 22 ¶ 59 (June 19); Doc.

No. 24-2, pp. 5 (June 22), 9 (June 28), 10 (July 23), 12 (July 14), 16 (August 1), 18 (October 11),

2 (October 23).  Plaintiff was therefore not "denied" medical treatment.  At most, he was not

provided medical screening or treatment at the precise moment he requested it.  This is a delay,

not a complete denial.

The individual defendants argue that Plaintiff has not alleged that any delay of medical

screening or treatment resulted in substantial harm.  *See* Doc. No. 42, p. 10.  Plaintiff resists this

argument, stating that it "is definitely not based off Plaintiff's allegations in the complaint or

attached documents."  (Doc. No. 56, p. 16.)  But the individual defendants are correct.  Review

of Plaintiff's allegations regarding the dates listed above reveals that while Plaintiff does allege

that he continued to suffer what he claims is heat-related discomfort and pain, he does not allege

---

[8]  Plaintiff was assigned to a "cool bed" between approximately August 1 and September 7, because he was subjected to a disciplinary case.  *See* Doc. No. 18, pp. 25-26, ¶¶ 78, 82.  It does not appear that he requested medical treatment during this time.

[9]  Plaintiff attached medical notes to his complaint from his June 18 visit to the infirmary.  (Doc. No. 18-6, p. 4.) The record reflects that the charge nurse found Plaintiff on the floor of the dayroom area in his housing building, "chest rising and falling evenly."  *Id.*  Vital signs were "within facility parameters," the record states, and Plaintiff's temperature was 97.3 degrees and his pulse was 90 beats per minute.  *Id.*  The nurse found "no abnormalities or deformities."  *Id.*  At 6:15, the record reflects, nurses contacted the physician assistant and were ordered to discharge Plaintiff back to his cell.  *Id.*  The record then states: "Patient was released back to cell/security, patient jumped out of stretcher per self, ambulating per self, socializing with staff, and exited clinic."  *Id.*

any lasting complications from any delay. *Cf. Epley*, 2023 WL 2483502, at \*12. Indeed, Plaintiff's submitted medical documentation reflects no diagnosis by any medical provider who examined Plaintiff indicating that he had any heat-related medical condition requiring treatment. Regardless of any delay in medical screening, Plaintiff does not allege (or point to, in his submitted documents) any occasion in which a McConnell Unit medical professional, upon finally examining Plaintiff, determined that Plaintiff had any heat-related medical condition at all.[10]

Plaintiff's self-diagnosis of heat-related illness is contradicted by the medical documentation he has submitted,[11] and he fails to allege any lasting complications from any delay in receiving medical treatment. The district court should therefore GRANT the Rule 12(b)(6) motion on this point and DISMISS Plaintiff's Eighth Amendment claims of deliberate indifference against Sergeant Martinez, Sergeant Perez, Sergeant Austin, and the unknown corrections officers[12] based on delayed medical care.

---

[10] The individual defendants also argue that disagreement with medical treatment does not suffice to state a claim for deliberate indifference. (Doc. No. 42, p. 9.) That is so, *see Petzold*, 946 F.3d at 249, but the argument is inapt because Plaintiff's claims do not allege incorrect treatment or a disagreement about the correct treatment. Plaintiff's allegations here are aimed at non-medical personnel and do not assail any decision made by a medical professional.

[11] Plaintiff's self-diagnosis is also conclusory. *Cf. Fountain v. Rupert*, No. 6:15cv100, 2024 WL 2106521, at \*23 (E.D. Tex. Jan. 9, 2024) (citing *Grizzle v. McIntire*¸ No. 5:22-CV-017-BQ, 2022 WL 17818101, at \*14 (N.D. Tex. Oct. 21, 2022) (prison official's failure to follow prisoner's self-diagnosis does not constitute deliberate indifference)); *Swyck v. Davis*, No. 2:16-CV-489, 2017 WL 4155364, at \*7 (S.D. Tex. Aug. 21, 2017) (Libby, M.J.), *adopted*, 2018 WL 647935 (S.D. Tex. Jan. 31, 2018) (citing *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion)).

[12] The unknown corrections officers have not yet been served or entered an appearance in this case. Nevertheless, the recommended dismissal should apply to them for the same reasons it applies to the named defendants. "The Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants." *Taylor v. Collier*, Civ. No. H-21-2161, 2022 WL 2871819, at \*4 n.2 (S.D. Tex. July 21, 2022) (Rosenthal, C.J.) (citing *Lewis v. Lynn*, 236 F.3d 766,768 (5th Cir. 2001)). "The policy rationale for this rule is that it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Lewis*, 236 F.3d at 768 (internal quotation marks omitted).

### d. *Official capacity defendants: ADA and RA – the district court should DENY the Rule 12(b)(6) motion.*

Plaintiff has sued several of the defendants in their official capacities for violation of the ADA and RA, requesting injunctive relief.  These defendants are Director Collier, Director Lumpkin, Warden Flannell, Warden Sammiego, Warden Ammonnet, and Major Masters.

The defendants seek dismissal under Rule 12(b)(6), arguing that Plaintiff's ADA and RA claim merely expresses disagreement with allegedly "inadequate treatment or response to" his purported heat-related health concerns.  (Doc. No. 42, p. 12.)  The defendants contend that Plaintiff has failed to allege any facts indicating that he "was denied any medical services or access to respite by way of his disability, nor that any challenged actions were taken because of the alleged disability."  *Id.*

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . .  shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private."  *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in

analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  Therefore, the undersigned analyzes Plaintiff's ADA and RA claims together.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability.  *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).  A qualifying disability is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(a)(1).  The definition of "disability" is to be given broad construction.  *See id*. § 12102(4)(A).[13]

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).  The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry.  *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations."  *Ball*, 792 F.3d at 596 n.9.

---

[13]  To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability."  *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original); *see also Davidson v. Tex. Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (per curiam) (applying similar standard for ADA claim).

Here, the defendants do not claim that Plaintiff has plausibly alleged that he has a qualifying disability.  They first appear to argue that Plaintiff has not been denied the benefit of any TDCJ program or service.  *See* Doc. No. 42, p. 12.  The undersigned disagrees: asked what TDCJ program, service, or activity he had been excluded from because of his disability, Plaintiff replied that he has been excluded from TDCJ heat mitigation measures.  Plaintiff claims that he has been refused respite, cool showers, "and even water and ice water.  I have been refused a cold bed and transfer to an air-conditioned unit and frequently denied respite."  (Doc. No. 24, p. 7 ¶ 58.)

The defendants also argue that Plaintiff fails to allege that any denial of respite was "taken because of the alleged disability."  (Doc. No. 42, p. 12.)  But this element of an ADA action can be satisfied, in the prison context, by a failure to accommodate.  In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, [and] medical care," which resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA); *see also Herschberger v. Lumpkin*, Civ. No. H-18-2550, 2022 WL 4454392, at *4 (S.D. Tex. Sept. 21, 2022) (Bennett, J.) (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017)).  In this case, Plaintiff has sufficiently alleged that the heat conditions are more onerous on him because of his particular alleged disabilities.  He also alleges that the named defendants have denied him reasonable accommodations for his heat-sensitive disabilities by not providing him with access

to respite when requested. Plaintiff's allegations suggest that the lack of such accommodations caused him to suffer more pain and punishment than non-disabled prisoners. This is sufficient to overcome the defendants' Rule 12(b)(6) motion to dismiss.

The district court should therefore DENY the motion to dismiss Plaintiff's ADA and RA claim under Rule 12(b)(6). Consequently, because Plaintiff's allegations survive Rule 12(b)(6) dismissal, this Court also possesses subject matter jurisdiction to consider them, and so the district court should also deny the Rule 12(b)(1) motion to dismiss the ADA and RA claim based on sovereign immunity (discussed above).

### e. Lieutenant Dougherty: First Amendment freedom of expression claim – the district court should DENY the Rule 12(b)(6) motion.

The undersigned liberally construed Plaintiff allegations as claiming that Lieutenant Dougherty violated his First Amendment right to freedom of expression by tearing down his "need respite" sign on June 4, 2023. (Doc. No. 29, p. 86; Doc. No. 18, p. 18; Doc. No. 24, p. 5 ¶ 35.) "A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Legitimate state penological interests can include things like security, order, and rehabilitation. *See Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (citing *Pell*, 417 U.S. at 822).

At screening, the undersigned found that Plaintiff alleged that his First Amendment rights were implicated by his posting of his handmade "need respite" signs. (Doc. No. 24, p. 5 ¶ 35.) Taking his allegations as true and construing them liberally, the undersigned concluded that Plaintiff's posting of the "need respite" sign appeared to have been an attempt to communicate to

prison officials that his medical condition dictated that he be permitted to go to a respite area.
Because the undersigned discerned no obvious state penological interest that would have been
adversely affected by Plaintiff's posting of such a sign on the outside of his cell door, the
undersigned concluded that Plaintiff plausibly alleged a First Amendment violation by
Lieutenant Dougherty by the latter's act of tearing down the sign, and directed service of process
on that claim.  (Doc. No. 29, p. 86.)

Lieutenant Dougherty now seeks dismissal, arguing that Plaintiff fails to plausibly allege
that he suffered any injury that would chill a person of ordinary firmness from continuing to
engage in that activity, or that Lieutenant Dougherty was substantially motivated against
Plaintiff's exercise of free speech.  (Doc. No. 42, p. 13.)  Lieutenant Dougherty appears to be
arguing that Plaintiff did not state a viable First Amendment retaliation claim.  *See id.* (citing
*Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) and *Keenan v. Tejeda*, 290
F.3d 252, 258 (5th Cir. 2002)).[14]  But a First Amendment freedom of expression claim is a
distinct substantive constitutional claim in its own right.  *Cf. Christoph v. Young*, 567 F. App'x
268, 269 (5th Cir. 2014) (mem. opinion) (freedom of expression claim was distinct from
procedural due process claim).  It is distinct from a retaliation claim.  Thus, Plaintiff was not
required to allege that Lieutenant Dougherty had the intent to retaliate against him for posting the
sign or that the tearing down of the sign would chill a person of ordinary firmness from posting
another one.

Lieutenant Dougherty does not contend that Plaintiff's expression was unprotected – as
applied here, that Plaintiff failed to plausibly allege that the posting of the "need respite" sign

---

[14]  The heading of this portion of Lieutenant Dougherty's dismissal motion states that Plaintiff failed to state a claim
for a First Amendment freedom of expression claim, *see* Doc. No. 42, p. 12, but the ensuing argument instead
analyzes the question in terms of First Amendment retaliation.  *See id.* at 13.

was consistent with his status as a prisoner. Nor does Lieutenant Dougherty contend that he or TDCJ could have limited Plaintiff's expression. *Cf. Turner v. Cain*, 647 F. App'x 357, 363-64 (5th Cir. 2016) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In response to the dismissal motion, Plaintiff contends that his act of expression was protected by the First Amendment because it was not inconsistent with his status as a prisoner. (Doc. No. 56, p. 18.) He also argues, liberally construed, that his act of expression did not adversely affect any legitimate state or penological interest. *See id.* Plaintiff has plausibly alleged a violation of his First Amendment right to free expression, and so the district court should DENY the dismissal motion contending that he failed to do so.

Although dismissal under Rule 12(b)(6) is not appropriate because Plaintiff plausibly alleges a First Amendment violation, additional discussion follows below regarding Lieutenant Dougherty's assertion of qualified immunity on that claim.

### f. Recap of recommendations on Rule 12(b)(6) motion.

The district court should take the following actions regarding the Rule 12(b)(6) dismissal motion:

- DENY the motion to dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Director Collier in his official capacity for injunctive relief;

- DENY the motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Sammiego, Warden Flannell, Sergeant Martinez, Sergeant Perez, Sergeant Ralphs, Sergeant Austin, Officer Chapa, Officer Sanchez, and Sergeant Ramirez in their individual capacities based on denial of respite;

- DENY as moot the motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Dougherty in his individual capacity based on denial of respite;

- GRANT the motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Martinez, Sergeant Perez, Sergeant Austin, and the unknown

corrections officers in their individual capacities based on denial or delay of medical care;

- DENY the motion to dismiss Plaintiff's ADA and RA claims against Director Collier, Director Lumpkin, Warden Sammiego, Warden Ammonnet, Warden Flannell, and Major Masters in their official capacities for injunctive relief; and

- DENY the motion to dismiss Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty in his individual capacity.

### F. The district court should deny Defendants' motion to dismiss based on qualified immunity.

Defendants seek dismissal of Plaintiffs' claims lodged against them in their individual capacities based on qualified immunity, arguing that Plaintiff has failed to allege a violation of a "clearly established" constitutional right.  (Doc. No. 42, pp. 13-15.)

### 1. Legal standard.

"This court applies a two-step analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."  *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The basis for the qualified immunity doctrine is "the idea that officials who perform their duties reasonably should not fear the harassment, distraction, and liability of a civil lawsuit for simply doing their job, while those who exercise their power irresponsibly should be held accountable."  *Broussard v. Jefferson Cnty.*, No. 1:15-CV-00309, 2016 WL 11190107, at *3 (E.D. Tex. Apr. 20, 2016), *adopted*, 2016 WL 3063826 (E.D. Tex. May 31, 2016) (citing *Pearson*, 555 U.S. at 231).  Qualified immunity is a generous shield: it provides "ample

protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, a government official can be held personally liable for monetary damages only if the official's particular conduct "violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *al-Kidd*, 563 U.S. at 735). Courts have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735 (citing *Pearson*, 555 U.S. at 236).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up)). A binding court case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Malley*, 475 U.S. at 341. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004)). Absent controlling authority, there must be a "robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 741 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). And the controlling decision or consensus must be with regard to the official's "*particular* conduct," described with specificity. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir.

34 / 41

2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)). The inquiry is judged against the backdrop of the law at the time of the conduct. *Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at *8 (S.D. Tex. Sept. 20, 2022) (Tipton, J.) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

When qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate that the doctrine does not apply. *Club Retro, LLC, v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia, Miss.*, 341 F.3d 314, 323 (5th Cir. 2002) (*en banc*). Thus, to negate qualified immunity at the Rule 12(b)(6) stage, Plaintiff must plead sufficient facts to plausibly show that the defendants' particular conduct violated a constitutional right that was clearly established at the time of the alleged misconduct. *Harmon*, 16 F.4th at 1163.

The undersigned has recommended dismissal of Plaintiff's claims for denial or delay of medical care. Thus, the remaining qualified immunity questions regarding Plaintiff's liberally construed claims are whether Plaintiff has alleged facts that plausibly show that the defendants who allegedly denied or terminated respite violated a clearly established Eighth Amendment constitutional right, and whether Lieutenant Dougherty's alleged tearing down of the "need respite" sign violated a clearly established First Amendment right.

### 2. The parties' arguments for and against qualified immunity.

The qualified immunity motion is a bit sparse. After discussing the concept of qualified immunity and describing the process for assessing its applicability, the defendants argue:

> Plaintiff failed to show the violation of a constitutional right. Assuming *arguendo*, even if the Court found a constitutional violation to have taken place, Defendants' actions were objectively reasonable in light of the law that was clearly established at the time. As discussed, the Fifth Circuit has never recognized a constitutional right to air-conditioned prisons. Instead, prison officials may discharge their constitutional obligations by implementing measures designed to mitigate the health risks posed by the heat. These measures need not remove any and all risk of

a heat-related injury, as "some risk is permissible and perhaps unavoidable."
[citation omitted]    Additionally, in many cases, Defendants['] actions were in
response to direction by medical staff.  In this case, Plaintiff has failed to meet the
incredibly high burden of deliberate indifference.

(Doc. No. 42, pp. 14-15.)

In response, Plaintiff argues that Eighth Amendment implications of extreme temperature

conditions in prison have been part of Fifth Circuit judicial precedent since at least the 1970s.

*See* Doc. No. 56, p. 8 (citing *Smith v. Sullivan*, 553 F.2d 373, 381 (5th Cir. 1977)).  He also

argues, liberally construed, that the law is clearly established that excessive heat conditions in

prison can violate the Eighth Amendment.  *Id.* at 4 (citing, *e.g.*, *Ball*, 792 F.3d at 592).  Indeed,

"[a] prisoner's right to be free from extreme temperatures was clearly established in 2011."

*Webb*, 618 F. App'x at 209 (a 2015 decision analyzing whether law on extreme heat was clearly

established at the time of the events in that case, and finding that it was).

### 3. Discussion.

#### a. Denial of (or termination of) respite claims: the district court should DENY the qualified immunity motion, without prejudice.

The defendants' argument is that they implemented measures designed to minimize the

health risks presented by extreme heat.  *See* Doc. No. 42, pp. 14-15.  But in this context the

question is not whether the implementation of heat-mitigation measures (such as those alleged

directed by AD 10.64, perhaps) satisfied the Constitution.  The allegation lodged by Plaintiff is

that the defendants failed to follow those measures with regard to him, through their deliberate

indifference.  The right to be free from excessive heat is clearly established, as discussed above.

To the extent the prison's heat mitigation protocols might be argued as being sufficiently

ameliorative as to provide some sort of "safe harbor" from Eighth Amendment liability,[15] the individual defendants here are alleged to have sailed themselves out of that harbor: Plaintiff's allegations regarding each of these individual defendants reflect that they each took actions that they knew would subject Plaintiff to excessive heat, and that they did so knowing of his alleged medical sensitivity to excessive heat and of the written restrictions directing that Plaintiff not be exposed to such heat and that he be provided with access to respite and cool showers. Plaintiff has alleged sufficient facts that, if true, indicate that he has been subjected to excessive heat in violation of the Eighth Amendment, and also that a reasonable prison official would know that depriving this plaintiff of heat mitigation measures would violate clearly established law. *Cf. Hinojosa*, 807 F.3d at 670. The district court should therefore DENY the defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim for denial of respite based on qualified immunity, without prejudice to their re-urging that argument later in the litigation as the facts develop, such as in a motion for summary judgment.

### b. The First Amendment freedom of expression claim: the district court should DENY the qualified immunity motion without prejudice as inadequately briefed.

Defendants' qualified immunity motion does not discuss Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty. *See* Doc. No. 42, pp. 14-15. As noted above, when qualified immunity is properly invoked, the burden shifts to the plaintiff to demonstrate that the doctrine does not apply. *Club Retro*, 568 F.3d at 194; *McClendon*, 341 F.3d at 323. That said, it is still the responsibility of the moving defendants to properly invoke the

---

[15] This is not a certainty. The heat mitigation measures allegedly described in AD 10.64 (a document which has not been provided to the Court in this case) may or may not be sufficient to satisfy the Constitution. Some remedial measures that "can suffice" include fans, ice water, and daily showers, among other things. *See Hinojosa v. Livingston*, 807 F.3d at 670.

defense.  A motion must be properly briefed, and arguments may be waived where a party fails

to adequately brief its arguments and support them with facts, evidence, or applicable authority.

*See Lindsey K. v. O'Malley*, No. 4:22-cv-04383, 2024 WL 990057, at *7 (S.D. Tex. Mar. 7,

2024) (Palermo, M.J.) (citing *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-

91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019) (Torteya, M.J.)); *see also* LR 7.1(B),

Local Rules of the United States District Court for the Southern District of Texas (motions must

"include or be accompanied by authority").  Qualified immunity motions are no different: it is

not enough for a movant to simply utter the words "qualified immunity" – there must be some

explanation of how the movant believes qualified immunity shields him or her from suit.

Here, while the defendants argue that qualified immunity shields them from Plaintiff's

Eighth Amendment heat-related claims, there is no discussion (or mention) of Plaintiff's First

Amendment claim against Lieutenant Dougherty.  An invocation of qualified immunity with

regard to heat mitigation measures is different from an invocation of qualified immunity

regarding a violation of a First Amendment right to freedom of speech or expression.  Lieutenant

Dougherty fails to adequately express why he believes he is shielded from suit on the First

Amendment claim.[16]  Perhaps the defendants' argument could potentially be stretched to an

interpretation that it is meant to include the First Amendment claim as well as the Eighth

Amendment claims.  But Lieutenant Dougherty is represented by counsel, and so the dismissal

motion is not entitled to such liberal construction.  *See Beasley v. McCotter*, 798 F.2d 116, 118

---

[16]  Plaintiff's response to the dismissal motion evinces that he too does not believe that Lieutenant Dougherty has
properly invoked qualified immunity from the First Amendment claim.  Although Plaintiff responds to the
defendants' qualified immunity argument with regard to his heat-related Eighth Amendment claims, *see* Doc. No.
56, p. 4 (arguing that "clearly established law" defeats qualified immunity on the Eighth Amendment claims and
citing cases), he does not attempt to argue that qualified immunity does not apply to the First Amendment claim.
*See id.* at 17-18.

(5th Cir. 1986); *Cook v. Louisiana Workforce, L.L.C.*, Civ. No. 16-00587, 2017 WL 4322412, at

*2 n.6 (M.D. La. Sept. 28, 2017). The undersigned therefore recommends that the district court

DENY Lieutenant Dougherty's dismissal motion for inadequate briefing, without prejudice to his

raising the claim later in this litigation: Lieutenant Dougherty has not properly invoked qualified

immunity on this claim. *Cf. Diaz-Colon v. Fuentes-Agostini*, 786 F.3d 144, 149 (1st Cir. 2015)

(affirming district court's rejection of qualified immunity defense based on inadequate briefing);

*Latimore v. Trotman*, Civ. No. 14-13378-MBB, 2017 WL 3623159, at *10 (D. Mass. Aug. 23,

2017) (denying motion to dismiss for inadequate briefing, without prejudice to raising the issue

at a later stage of the proceeding).

### 4. *Recap of qualified immunity recommendations.*

The district court should take the following actions:

- DENY the defendants' qualified immunity motion because Plaintiff plausibly alleges deliberate indifference in the defendants' denial of respite and termination of respite in violation of a clearly established Eighth Amendment right to be free from excessive heat conditions; and

- DENY Lieutenant Dougherty's qualified immunity motion because Plaintiff plausibly alleges a First Amendment violation and because Lieutenant Dougherty's qualified immunity motion is inadequately briefed.

### G. *Recommendation.*

The undersigned recommends that the motion to dismiss (Doc. No. 42) be GRANTED IN

PART and DENIED IN PART. The district court should take the following actions:

- DENY the Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Director Collier in his official capacity.

- DENY the Rule 12(b)(6) motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Warden Sammiego, Warden Flannell, Sergeant Martinez, Sergeant Perez, Sergeant Ralphs, Sergeant Austin, Officer Chapa, Officer Sanchez, and Sergeant Ramirez in their individual capacities for denying or terminating respite.

- DENY as moot the Rule 12(b)(6) motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Dougherty in his individual capacity for denying or terminating respite.

- GRANT the Rule 12(b)(6) motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Sergeant Martinez, Sergeant Perez, Sergeant Austin, and the unknown corrections officers in their individual capacities for denial or delay of medical care, and DISMISS those claims with prejudice.

- DENY the Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss Plaintiff's ADA and RA claims against Director Collier, Director Lumpkin, Warden Sammiego, Warden Ammonnet, Warden Flannell, and Major Masters in their official capacities.

- DENY the Rule 12(b)(6) motion to dismiss Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty in his individual capacity.

- DENY without prejudice the motion to dismiss the Eighth Amendment deliberate indifference claims against Warden Sammiego, Warden Flannell, Lieutenant Dougherty, Sergeant Martinez, Sergeant Perez, Sergeant Ralphs, Sergeant Austin, Officer Chapa, Officer Sanchez, and Sergeant Ramirez in their individual capacities for denying or terminating respite based on qualified immunity.

- DENY without prejudice the motion to dismiss Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty in his individual capacity based on qualified immunity.

After resolution of the dismissal motion, the following claims should remain and

proceed:

- Plaintiff's Eighth Amendment conditions of confinement claim against Director Collier in his official capacity for injunctive relief;

- Plaintiff's Eighth Amendment deliberate indifference claims against Warden Sammiego, Warden Flannell, Captain Herbst, Lieutenant Bleidrey, Sergeant Martinez, Sergeant Perez, Sergeant Ralphs, Sergeant Austin, Officer Chapa, Officer Sanchez, Sergeant Ramirez, and the unknown corrections officers in their individual capacities for denial or termination of respite;

- Plaintiff's ADA and RA claims against Director Collier, Director Lumpkin, Warden Sammiego, Warden Ammonnet, Warden Flannell, and Major Masters in their official capacities for injunctive relief;

- Plaintiff's First Amendment freedom of expression claim against Lieutenant Dougherty in his individual capacity; and

- Plaintiff's First Amendment retaliation claims against Sergeant Ramirez, Sergeant Martinez, and the unknown corrections officers in their individual capacities.

### H.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on August 16, 2024.

MITCHEL NEUROCK
United States Magistrate Judge